FILED
Wednesday, 15 September, 2004 03:19:21 PM
Clerk, U.S. District Court, ILCD

SEP 15 2004

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT
URBANA DIVISION

DR. K.L. WRONKE, )
    Plaintiff, )
     )
vs. ) Cause No. 2001-2308
     )
Champaign County Sheriff's )
Department, and David Madigan, )
individually, and in his Official )
capacity as Sheriff of Champaign )
County, and David Smalley, individually, )
and in his Official capacity as a )
Champaign County Sheriff's Deputy, and )
Lu Wilson, R.N., and Dr. Maher K. Ahmad, )
     )
    Defendants )

### MOTION TO STRIKE DEFENDANT AHMAD'S ACTION FOR SUMMARY JUDGMENT AND ALL SUBMITTED DOCUMENTS RELATED THERETO

COMES NOW the Plaintiff, Dr. K.L. Wronke, appearing personally, with his Motion to Strike Defendant Ahmad's action for Summary Judgment and all submitted documents related thereto and in support hereto states as follows:

1. That this Motion to Strike is supplemented by Exhibit A (photos) and the Plaintiff's Counter-Affidavit in addition to the Pleadings on file in this matter.

2. That the Plaintiff's former Expert will testify as a lay or opinion witness regarding his personal knowledge in his capacity as contract physician for Vermilion County Public Safety.

3. That the Doctrine of Res Ipsa Loquitur applies in the above captioned Cause.

4. That the Plaintiff may prove the Standard of Care, or lack thereof, by any Affirmative evidence. (Casey v. Penn (1977, 2d Dist) 45 Ill App 3d 1068, 6 Ill Dec 453, 362 NE 2d 1373.

5. That in a personal injury case, there is no requirement that the Plaintiff produce medical testimony where he clearly testifies to his injuries and the medical treatment he received. Turner v. Chicago (1968, 1st Dist) 95 Ill App 2d 38, 238 NE 2d 100.

6. That Expert testimony is not required in Illinois Courts in a medical malpractice case if the negligence is so grossly apparent that a layman would have no difficulty in appraising it. Graham v. St. Luke's Hospital, (1964 1st Dist.) 46 Ill App 2d 147, 196 NE 2d 355.

7. That the Plaintiff can meet his Burden of Proof in this case under Count V with his own testimony of the facts in this matter and testimony from Officer Foster and Defendant Ahmad

8. That any deviation from the applicable Standard of Care is easily appraised by lay persons armed with every day knowledge and understanding. A jury simply views the Defendant's conduct against its own conception of reasonable behavior.

9. That the retained Expert, Suchomski, for Defendant Ahmad did not state in his opinion whether the procedures followed by Ahmad were in the best interest of the Plaintiff patient

10. That the retained Expert, Suchomski, for the Defendant Ahmad, had no opinion regarding the physician's duty to persever and carefully examine and treat each patient in his charge.

11. That the testimony of Plaintiff alone, unsupported by expert testimony, will be sufficient where he has related a plain statement of subjective symptoms and allegations of pain and suffering following an injury which a jury is free to accept or reject in the abscence of any countervailing evidence, medical or otherwise, Hyatte v. Cox, (1965 4th Dist.) 57 Ill App 2d 293, 206 NE 2d 34.

12. That item #9 of the Motion for Summary Judgment is a Conclusion of law that is not correct; to wit, the law does not require that the Plaintiff in every personal injury case produce a doctor to testify as to injuries alleged to have been sustained. Palmer v. De Filippis, (1944) 321 Ill App186, 53 NE 2d 34.

13. That the Plaintiff meets the criteria to establish every fact necessary to a cause of action, namely existence of a patient or client relationship with Defendant Ahmad, alleged deviation from normal standards in the locality in the matter, and that such deviation was the actual and proximate cause of injury or damage in fact suffered by the Plaintiff Wronke.

WHEREFORE, the Plaintiff, Dr. K. L. Wronke, respectfully seeks to have the Motion for Summary Judgment denied and the Court Strike the supporting documents, opinions, and Affidavits because the Motion is fatal when based on the lack of expert medical testimony since there is no such requirement under Illinois law.

Respectfully submitted,

*Kenneth L. Wronke VMD*
Kenneth L. Wronke, VMD

Certificate of Service

I certify that a true and correct copy of my Motion to Strike and counter-affidavit was placed in the U.S. mail at Danville, Illinois, 61832 on the 14th day of September 2004 to the Clerk of the DISTRICT COURT, 201 S. Vine st., Room 218, Urbana, Illinois 61802, and James J. Hagle, 129 W. Main st., Urbana, Illinois 61801, and Kenneth D. Reifsteck Box 560 30 E. Main st., Champaign, Illinois 61824-0560 and Richard P. Klaus, Suite 300, 102 E. Main st., Urbana, Illinois 61801

*Dr K. L. Klronke*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT
URBANA DIVISION

| | |
|---|---|
| Dr. K. L. Wronke,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Champaign County Sheriff's Department, and David Madigan, individually, and in his Official capacity as Sheriff of Champaign County, and David Smalley, individually and in his Official capacity as a Champaign County Sheriff's Deputy, and Lu Wilson, R.N., and Dr. Maher K. Ahmad,<br><br>　　　　Defendants | Cause No. 2001-2308 |

### COUNTER-AFFIDAVIT OF PLAINTIFF
### Dr. Kenneth L. Wronke

I, Dr. Kenneth L. Wronke, being duly sworn under oath, do hereby swear to the truth of the following:

1. I have personal knowledge of all the facts set forth in this Affidavit.
2. I am a licensed Veterinary Medical Doctor in the State of Illinois an in the state of Wisconsin.
3. I have never be judged incompetent or unable to testify in any Court of law.
4. I was a licensed Emergency Medical Technician -Ambulance and an Emergency Rescue Technician in the State of Illinois for 13 years.
5. I was owner/operator of two land ambulance services , an air ambulance and a non-emergency land ambulance transport service.
6. I am of legal age and without any legal disability.
7. I have never been convicted of any felonies.
8. I was being held in the Champaign County jail from 04 October 1995 through 20 March 2000 for indirect civil contempt.

9. At the time of my accident on 12 December 1999, Sunday morning, I had a right side, indirect inguinal hernia half the size of a football.

10. I experienced a fall with serious injury at the Champaign County jail at approximately 6:00 A.M. December 12, 1999.

11. There was no medical staff present at the time of the accident.

12. That the "on call" nurse (Defendant Wilson) failed to report when informed of the injured resident, a 67 year old herniated senior citizin.

13. That contrary to Ahmad's Affidavit he failed to perform a "head to toe" assessment of the injured resident; i.e. he did not take a blood pressure, pulse, nor respirations nor did he inquire about the quantity of blood loss nor examine the deformed shoulder joint.

14. I can say with certainty that at the time of initial presentation, I could not raise my right arm and informed the Defendant of that fact.

15. Defendant Ahmad failed to diagnose shoulder injury with deformity.

16. Defendant Ahmad failed to examine the pre-existing hernia after a fall of approximately 3 feet to a cement floor.

17. Defendant Ahmad did not arrive to treat the injuries for more than 3 hours after the fall.

18. Defendant Ahmad proceeded to perform surgery on the lacerated elbow to middle forearm without a proper surgical suite and sterile attire and instruments.

19. Defendant Ahmad failed to properly prepare the lacerated forearm for surgery..did not shave hair off arm in and around wound, and did not cleanse with surgical antiseptic solution.

20. I was not taken to ER facility (level 1 trauma center is less than a mile from site where fall occurred.) for CATSCAN or MRI of shoulder neck, spine, hips and head trauma after the fall.

21. I have a permanent deformity with loss of range of motion and loss of strength in th e right arm.

22. No one called for an ambulance to take the Plaintiff to the ER for evaluation.

23. I was never asked how much blood I lost through the 8 inch "S" shaped laceration from the elbow to mid-forearm.

24. I was not asked by Nurse Wilson on 12 December 1999 if I wanted any pain medicine.

25. At one meeting with Defendant Ahmad, I informed him my right arm was getting smaller with each passing day.

26. I demonstrated to Defendant Ahmad that I could not raise my arm, and had to use my left arm to lift the right arm up and across my forehead to expose the laceration.

27. At no time initially or at suture removal time did Defendant ever examine any part of the plaintiff.

28. Defendant Ahmad never asked me to remove the white T-shirt that covered the deformed shoulder joint.

29. Defendant Ahmad informed me that the pain I experienced in my right shoulder was "referred" pain from my forearm.

30. I received "profin" for pain from staff upon request and on one occasion had LPN ahrends, of the medical staff, palpate my shoulders to concur the right shoulder was deformed.

31. I had contact with every inmate at the facility on a daily basis. in 4 years and 5 months, I never saw or spoke with an inmate that had to have surgery within the facility.

32. Defendant Ahmad refused to administer a tetanus booster injection even after learning the laceration was from a filthy metal garbage can.

33. Defendant Ahmad refused to administer any antibiotics given the septic conditions I was exposed to.

34. Defendant Ahmad injected local anesthetic into my arm before determining whether or not I was allergic to that product.

35. Defendant Ahmad had no provisions to treat Shock should it occur; no oxygen, no nasal cannulae, no oxygen humidifiers, and no epinephrine nor IV fluids nor means to deliver the fluids intravenously.

36. I refused pain medication because I have a high tolerance for discomfort.

37. I diagnosed the rotator cuff injury, for Defendant Ahmad, by telling him I did not think I could throw a forward pass in a football game. He disregarded my evaluation.

38. In the Affidavit of Defendant Ahmad he states his opinions were based on the findings during his examinations and the course of the treatment. I say with absolute certainty there was no examinations nor a course of treatment.

Further not sayeth the Affiant:

                                                                                 *Dr. K. L. Wronke*
                                                                                 Dr. K. L. Wronke

Subscribed and sworn to before me
On this 14th day of September 2004

**OFFICIAL SEAL**
IVAN T. SOLGARD
Notary Public, State of Illinois
My Commission Expires 6/28/08

EXHIBIT A
2001-2308




