UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KEN WRONKE,<br>    **Plaintiff,**<br> v.<br><br>CHAMPAIGN COUNTY SHERIFF'S<br>DEPARTMENT; DAVID MADIGAN,<br>individually; DAVID SMALLEY,<br>individually; LU WILSON; DR. MAHER<br>K. AHMAD,<br>    **Defendants.** | Case No. 01-2308 |

# ORDER

In December 2001, Plaintiff, Ken Wronke, filed a Complaint (#1) against Defendants Champaign County Sheriff's Department, David Madigan, David Smalley, Lu Wilson, and Dr. Maher Ahmad. In January 2003, Plaintiff filed a Fourth Amended Complaint (#120), alleging that Madigan, Smalley, and Wilson violated his constitutional rights and alleging medical malpractice against Ahmad. Jurisdiction over this case is based on federal question.

In August 2004, Defendants Madigan and Smalley filed a Motion for Summary Judgment on Counts I, II and III of Plaintiff's Fourth Amended Complaint (#184). In September 2004, Plaintiff filed a Motion To Strike Defendant's (*sic*) Madigan and Smalley's Action for Summary Judgment and All Submitted Documents Related Thereto (#189). After reviewing the parties' pleadings and memoranda, the Court **DENIES** Plaintiff's Motion To Strike Defendant's (*sic*) Madigan and Smalley's Action for Summary Judgment **(#189)** and **GRANTS** Defendants' Motion for Summary Judgment on Counts I, II and III of Plaintiff's Fourth Amended Complaint **(#184)**.

## I.  Background

Plaintiff's claims arose as a result of injuries he sustained to his arm in December 1999 while he was incarcerated at the Champaign County Correctional Center (hereinafter "Correctional Center" or "jail").

At times relevant to this suit, Defendant Madigan was Sheriff of Champaign County, responsible for the Correctional Center and for the day-to-day operation of the Champaign County Sheriff's Department and its deputies. Defendant Smalley was a deputy sheriff who worked at the Correctional Center. Defendant Wilson, an agent of the Champaign County Sheriff's Department, was a registered nurse with authority to administer first aid and to order emergency medical care for jail residents. Defendant Ahmad was a doctor and an agent of the Champaign County Sheriff's Department.

The parties dispute some of the facts in this case. In the following background, where the facts are disputed, the Court has accepted Plaintiff's version. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (When ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.).

Plaintiff was incarcerated at the Correctional Center from October 1995 to March 2000. In 1996, Officer Ogle asked Plaintiff if he wanted to be laundry trusty and Plaintiff agreed. As trusty, Plaintiff handled the laundry for inmates and mopped the laundry area and the hallway in front of the laundry room. (Pl. dep., pp. 19, 157-58.) In addition to his duties as laundry trusty, Plaintiff brought breakfast, lunch, and dinner trays to the officers, who then distributed meals to the inmates. (Pl. dep., pp. 154-59.)

Plaintiff was not required to be a laundry trusty and he never requested to be removed from that position. (Pl. dep., pp. 149, 162.) His day began around 3:00 to 3:15 a.m. and ended around 11:00 p.m. (Pl. dep., pp. 153-54, 160.) He testified that he did not care what time he started and he would "rather be in the laundry than in the pod with the dregs of society." (Pl. dep., p. 155.) He did not have a regular long-term assistant. Sometimes he would ask Nancy Griffin to assign him an assistant when someone he knew was incarcerated and she would do so. (Pl. dep., p. 161.)

On December 12, 1999, at around 6:00 a.m., Plaintiff was transferring laundry to a barrel

that was on four casters.  The barrel was not secured to the caster platform and as Plaintiff moved the laundry, the casters and the barrel separated.  Plaintiff lost his balance and fell, hitting his forearm on a garbage can and sustaining a cut on his forearm.  Plaintiff's shoulder did not hit anything when he fell.  (Pl. dep., p. 25.)

Plaintiff initially planned to use "butterfly Band-aids" on the cut, but Lynn Dobbs, a cook in the kitchen, called Defendant Smalley for first aid.  (Pl. dep., p. 27.)  Smalley and Plaintiff then went to either the first aid station or the booking room.  Smalley immediately contacted Defendant Wilson, the nurse on call.  Wilson did not come in to evaluate Plaintiff; instead, she gave Smalley instructions over the phone regarding the laceration.  (Pl. dep., p. 30.)  She instructed Smalley to have Plaintiff lie on his back and hold his arm up to control the bleeding.  Then Smalley taped gauze over the laceration and that stopped the bleeding.  (Pl. dep., p. 31.)  Smalley told Plaintiff that Wilson said the doctor would be there in about thirty minutes.  (Pl. dep., p. 39.)  Around this time, Plaintiff asked Smalley why they were not going to the emergency department, and Smalley told him that his injury would be taken care of in the aid station at the jail.  (Pl. dep., p. 57.)

Defendant Smalley then left Plaintiff in the day room, where he waited until Defendant Ahmad arrived at the jail around 9:45 or 10:00 a.m.  Once Dr. Ahmad arrived, Plaintiff was taken to the aid station.  Plaintiff asked for a tetanus shot and some antibiotics, and Dr. Ahmad told Plaintiff that there were no "injectables" at the aid station.  (Pl. dep., p. 44.)  Dr. Ahmad then applied a local anesthetic to Plaintiff's arm and stitched the cut.  Plaintiff does not recall whether Dr. Ahmad used antibiotic cream on the sutures.  At this time, Plaintiff also told Dr. Ahmad that his shoulder hurt.  Dr. Ahmad told him it might be referred pain from his forearm.  Dr. Ahmad did not examine the shoulder.  After Dr. Ahmad finished treating Plaintiff, Plaintiff returned to his regular work activities.

The day after Plaintiff injured himself, Defendant Wilson came to the laundry to check on his condition.  She asked Plaintiff how he was doing, and he replied that he was fine, under

3

the circumstances. Wilson did not examine his arm or shoulder or have any discussion with Plaintiff about pain pills. (Pl. dep., pp. 52-53.) About ten days after Plaintiff was injured, Dr. Ahmad removed the stitches. At that time, he told Dr. Ahmad there was something wrong with his arm because the muscles in the biceps area and his forearm were smaller on the right side than on the left side. (Pl. dep., p. 71.) He also told him that he was concerned about his rotator cuff. (Pl. dep., p. 73.) After this contact, Plaintiff had no other contact with Dr. Ahmad.

Plaintiff testified that he was in constant pain and could not use his arm and shoulder for ten days after he injured himself. After December 13, 1999, Plaintiff never spoke with Defendant Wilson about anything related to his arm or shoulder and never requested pain medication from Wilson. From the time Dr. Ahmad removed his stitches in December 1999 until Plaintiff was released from jail in March 2000, Plaintiff never sought medical treatment or attention from Defendant Ahmad at the jail for his shoulder or arm and never told Ahmad that he was in pain. Plaintiff knew how to request medical care and knew he could go to the aid station at the jail, but he never visited the aid station for his shoulder. (Pl. dep., pp. 80-81.) He never asked to see any doctors outside the jail. (Pl. dep., p. 77.)

Plaintiff testified that he told Joyce Ahrens, another nurse at the jail, about his shoulder pain. However, he stated that his contact with her was incidental and not in her official capacity as nurse. (Pl. dep., p. 107.) He obtained over-the-counter pain medication (aspirin, Tylenol, or ibuprofen) from Ms. Ahrens every few days. He also obtained pain medication from the guards two or three times a week by telling them that he had a headache. (Pl. dep., pp. 66-67.) He did not tell them the medication was for his shoulder or arm.

After he was released from the Correctional Center in March 2000, Plaintiff continued to experience pain and lack of mobility with his arm and shoulder. He treated himself by taking over-the counter pain medicine daily. (Pl. dep., p. 85.) He first went to see a doctor about his arm in January 2001, about ten months after his release. At that time, Plaintiff told Dr. Marsh that he needed to see a specialist. Dr. Marsh referred him to Dr. Dethmers. Plaintiff never saw Dr. Dethmers. Next, Dr. Marsh referred him to Dr. Plattner. He saw Dr. Plattner for an

4

examination and MRI around March 2001.

Plaintiff's fourth amended complaint alleges three claims against Defendants Madigan and Smalley. In Count I, against Madigan in his official capacity, Plaintiff alleges that Defendant Madigan intentionally assigned Plaintiff to a job that required him to work up to twenty hours per day and allowed him to be physically harmed. Alternatively, Count I alleges that Madigan failed to adequately train and supervise his staff, which allowed them to implement their own policies concerning work conditions and medical treatment. In Count III, against the Sheriff's Department, Plaintiff alleged that Madigan and Smalley failed to adequately monitor Madigan, Smalley, Wilson, and Ahmad and failed to adopt rules to ensure that inmates received prompt appropriate medical care. In addition, the lack of an adequate policy permitted Sheriff's deputies (nonmedical personnel) to evaluate inmates' medical needs and to provide medical care at whim.

## II.  Standard

### A.  Motion To Strike

The Court may order stricken from the pleadings any material that is redundant, immaterial, impertinent, or scandalous. FED. R. CIV. P. 12(f).

### B.  Motion for Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has a single task: to decide, based upon the evidence of record, whether a genuine issue exists as to any material fact that requires a trial. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). A disputed fact is "material" if it might affect the outcome of the case under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248.

When ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255. The Court is not required to draw every conceivable inference from the record in favor of the nonmoving party, but only those inferences that are reasonable. *See Chmiel v. J.C. Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998). Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, a nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001), *cert. denied,* 535 U.S. 1112 (2002). Thus, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts, and instead must present definite, competent evidence to rebut the motion. *Id*.

### III.  Motion To Strike

Plaintiff's motion to strike states that Defendants erred by citing depositions that were not part of the record. He relies on an Illinois state court case, which states that a deposition used to support a motion for summary judgment must be either signed by the deponent or contain a waiver of the deponent's signature, and it must be certified, sealed, and filed with the court clerk. *See Bezin v. Ginsburg*, 375 N.E.2d 468, 474 (1st Dist. Ill. 1978).

Because Plaintiff elected to file his case in federal court, federal rules of procedure apply. Federal Rule of Civil Procedure 30 governs depositions upon oral examination. The deposition testimony provided by Defendants in support of their motion for summary judgment complies with Rule 30. Accordingly, the Court denies Plaintiff's motion to strike. The Court will treat Plaintiff's motion as a response to Defendants' motion for summary judgment.

### IV.  Motion For Summary Judgment

Defendant Smalley argues that he is entitled to summary judgment as to Plaintiff's claim regarding the work assignment because Plaintiff failed to present any facts showing that Smalley was personally involved in the work assignment. As to Plaintiff's claim regarding medical care, Smalley argues that Plaintiff has failed to establish the elements of an Eighth Amendment

violation. Defendant Madigan argues that the Court should grant summary judgment in his favor because Plaintiff has failed to present evidence that a policy caused a constitutional injury and because the facts do not support Plaintiff's claims.

### A. Evidentiary Issues

As an initial matter, the Court notes that Plaintiff has responded to Defendants' motion for summary judgment by making more allegations. A *pro se* plaintiff need not comply with the specific procedural requirements described in Rule 7.1(D) of the Local Rules for the Central District of Illinois (*see* CDIL-LR 7.1(D)(5)). Nevertheless, he must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael,* 259 F.3d at 845. When statements are not supported by reference to competent evidence, they do not effectively challenge a defendant's statements of undisputed facts. Instead, they are simply unsupported conclusory allegations.

Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits and evidence offered in opposition to summary judgment be made on personal knowledge, setting forth facts that would be admissible in evidence, and showing affirmatively that the affiant is competent to testify to the matters stated therein. FED. R. CIV. P. 56(e). Although "personal knowledge" may include inferences and opinions, those inferences must be substantiated by specific facts. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citing *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988)).

Many of the assertions in Plaintiff's affidavit do not constitute the "definite, competent evidence" required to rebut Defendants' facts. *See Michael*, 250 F.3d at 845. For example, in his motion to strike, Plaintiff states that "because of a lack of training, the Sheriff's Department staff failed to take decisive action: i.e. control the bleeding with a pressure bandage, place the arm in an air splint, and sling with a triangle bandage; then call the paramedics." (#189, ¶ 6.) In Paragraph 9, he states that "a 3 hour plus wait is tantamount to no help and is a denial of aid when the hospital was within walking distance." (#189, ¶ 9.) In Paragraph 13, Plaintiff states that "[t]he right forearm injury did result in a permanent injury to the right rotator cuff causing a

7

permanent narrowing of the shoulder joint, loss of range of motion, pain, and loss of strength in the right arm." (#189, ¶ 13.) These statements and others in Plaintiff's motion are the type of conclusory allegation that Rule 56 counsels should be disregarded on summary judgment. Furthermore, notwithstanding Plaintiff's background as a veterinarian, emergency medical technician, and emergency rescue technician, he does not satisfy the requirements to testify as an expert regarding medical care. *See Sullivan v. Edward Hosp.*, 806 N.E.2d 645, 655 (Ill. 2004). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983). The Court will not rely upon statements that are conclusory, but will, where applicable, rely upon the more reliable evidence in the record, including the depositions of the parties and other witnesses. *See Market v. Illinois Bell Tele. Co.*, No. 01 C 3841, 2003 WL 22697284, *5-6 (N.D. Ill. Nov. 13, 2003).

### B. The Claims Against Defendant Smalley

Defendant Smalley argues that he is entitled to summary judgment as to Plaintiff's constitutional claim regarding the work assignment because Plaintiff failed to present any facts showing that Smalley was personally involved in assigning him to the job of laundry trusty. As to Plaintiff's constitutional claim regarding medical care, Smalley argues that Plaintiff has failed to establish (1) that Plaintiff's injury constituted a serious medical condition, or (2) that Smalley acted with deliberate indifference. The Court agrees with Defendant.

The Eighth Amendment prohibits cruel and unusual punishment. In the medical care context, prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In the context of prison conditions, punishment in the constitutional sense means extreme deprivations over an extended period of time. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992); *Bell*

*v. Wolfish,* 441 U.S. 520, 542 (1979). Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Gibson v. Ramsey*, No. 99 C 5315, 2004 WL 407025, *5 (N.D. Ill. Jan. 29, 2004); *see Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement if he knows that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate it).

### 1. The Medical Care Claim

To prevail on an Eighth Amendment claim regarding deprivation of adequate medical care, the detainee must show that (1) the official deprived the detainee of an objectively serious medical need; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Under the first element, an objectively serious injury or medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Id.; see also Davis v. Janes*, 936 F.2d 971, 972 (7th Cir. 1991) (a medical condition is deemed serious if it may be life-threatening or may pose a risk of needless pain or lingering disability if not treated at once). Under the second element, it must be shown "that the official was aware of the risk and consciously disregarded it." *Chapman*, 241 F.3d at 845.

In its Order responding to Defendant Wilson's motion for summary judgment, the Court considered whether the injuries to Plaintiff's forearm and shoulder were "serious" in the context of the Eighth Amendment. *See Chapman*, 241 F.3d at 845. Based on the evidence, including Plaintiff's ability to continue working following his injury, his failure to seek medical care for his shoulder while he was incarcerated, and his failure to seek medical care for his shoulder for nine to ten months after he was released, the Court concluded that Plaintiff's shoulder injury was not serious. However, the Court concluded that the laceration arguably constituted a serious medical condition in the context of the Eighth Amendment. The Court adheres to those

conclusions.

The second element of an Eighth Amendment violation requires that a defendant must have acted deliberately or recklessly in failing to treat a medically serious condition, meaning that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1995). Mere negligence or even gross negligence does not constitute deliberate indifference. *Wilson*, 501 U.S. at 305.

Assuming that the injury to Plaintiff's forearm constituted a serious medical condition, Plaintiff has presented no facts showing that Defendant Smalley was deliberately indifferent. He responded immediately when informed of the injury. He called the nurse on call for advice and apparently followed it. He taped gauze over the laceration which effectively stopped the bleeding. (Pl. dep., p. 31.) His response was prompt and appropriate. In short, he did what he could until Dr. Ahmad arrived to suture to cut. Once Dr. Ahmad arrived to treat Plaintiff's injury, Smalley's role as a temporary medical care provider essentially ended. Although Plaintiff testified that he was in much pain for the next ten days, obtained pain medication from Ms. Ahrens and some of the other officers, and continued to have problems with his shoulder up to the time he was released, Plaintiff has not presented any evidence that he asked Smalley to help him obtain treatment for his arm or shoulder or that Smalley knew about his continuing problems. Based on the evidence, Plaintiff has failed to show that Smalley was deliberately indifferent to Plaintiff's forearm or shoulder injuries.

Plaintiff alleged that Defendant Smalley "intentionally and willfully failed to provide prompt medical attention for Wronke at a hospital emergency room despite the fact that he knew or should have known he was not qualified to evaluate Wronke's injury nor did he know when medical care providers would attend Wronke after Lu Wilson refused to attend him." (#120, ¶ 16.) Plaintiff also stated that "a 3 hour plus wait for medical aid is tantamount to no help and is a denial of aid when the hospital was within walking distance." (#189, ¶ 9.) If Plaintiff's claim against Smalley is based on Smalley's failure to take Plaintiff to a hospital emergency room, the Court notes that a prisoner does not have a constitutional right to the medical treatment of his

10

choice. *See Estelle*, 429 U.S. at 107; *Higgins v. Corr. Med. Servs. of Ill., Inc.,* 178 F.3d 508, 513 (7th Cir. 1999). If Plaintiff's claim is based on the delay between the time of his injury and the time Dr. Ahmad saw him, that contention is also unpersuasive. Although a lengthy delay in necessary treatment can establish deliberate indifference, a plaintiff must present "verifying medical evidence" to show how the delay adversely affected the inmate's condition. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1999). Here, Plaintiff stated in his opposition to the summary judgment that he sustained permanent damage to his arm. (#189, ¶ 13.) However, Plaintiff is not qualified to testify as an expert, and this statement does not constitute admissible competent evidence. Thus, Plaintiff has not cited any "verifying medical evidence" to support that contention. Finally, Plaintiff has presented no evidence showing that Smalley was aware of a risk of further injury. Even if Smalley knew that Plaintiff was requesting pain medication, Plaintiff testified that he told the correctional officers that the pain medication was for a headache.

Based on the evidence, the Court concludes that no reasonable jury could find that Defendant Smalley's conduct related to Plaintiff's medical care constituted deliberate indifference to a serious medical condition.

### 2. The Work Assignment Claim

Defendant Smalley next argues that the Court should grant summary judgment in his favor on the claim regarding Plaintiff's work assignment. Specifically, Defendant contends that (1) Plaintiff failed to establish that Defendant Smalley was personally involved in assigning Plaintiff to work as laundry trusty; and (2) Plaintiff volunteered for the work he did.

Individual liability arises for constitutional violations under Section 1983 only if an individual is personally involved in the alleged violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Here, the evidence is undisputed that Officer Ogle contacted Plaintiff and asked him if he would like to work as laundry trusty, and Nancy Griffin assigned work to the inmates. Defendant Smalley was not involved in the initial decision to ask Plaintiff to work as trusty, nor is there any evidence that he had any authority to assign him the job or require him to

11

work in that position or any position at the jail.

Furthermore, the evidence shows that Plaintiff volunteered to work as a laundry trusty. It is undisputed that Officer Ogle asked Plaintiff if he wanted to work as trusty. Plaintiff testified that he told Officer Ogle, "it doesn't make any difference to me. I didn't mind it. It was something to do." (Pl. dep., p. 147.) Plaintiff testified that he was not required to be a laundry trusty and he never requested to be removed from that position. Plaintiff also testified that he did not care what time he started working and he would "rather be in the laundry than in the pod with the dregs of society." (Pl. dep., p. 155.)

In Count II, Plaintiff also alleged that Defendant Smalley had a duty to provide safe equipment for Plaintiff to use in his job as trusty and he negligently provided damaged equipment. (#120, ¶¶ 31, 13.) To the extent Plaintiff may be seeking to establish a constitutional claim based on Smalley's alleged failure to provide safe equipment, the Court notes that liability for a constitutional violation cannot be based on negligence. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (evidence of negligence is insufficient to establish deliberate indifference to a serious medical need). Furthermore, Plaintiff has presented no evidence that Smalley was responsible for providing his work equipment or that he was negligent in doing so.

Accordingly, the Court grants Defendant Smalley's motion for summary judgment on Count II.

### B. The Claims Against Defendant Madigan

Defendant Madigan argues that he is entitled to summary judgment as to Plaintiff's constitutional claims related to medical care and the work assignment because Plaintiff has failed to establish a constitutional violation or the existence of a policy or custom.

In Count I, Plaintiff alleged that Defendant Madigan intentionally assigned Plaintiff to a

job that required him to work up to twenty hours per day and allowed him to be physically harmed. Alternatively, Count I alleges that Madigan failed to adequately train and supervise his staff, which allowed them to implement their own policies concerning work conditions and medical treatment. In Count III, Plaintiff alleged that Madigan and Smalley failed to adequately monitor Madigan, Smalley, Wilson, and Ahmad and failed to adopt rules to ensure that inmates received prompt appropriate medical care. In addition, the lack of an adequate policy permitted Sheriff's deputies (nonmedical personnel) to evaluate inmates' medical needs and to provide medical care at whim.

As an initial matter, the Court notes that Count I is against Defendant Madigan in his official capacity. Count III is against the Sheriff's Department. When a claim is brought against an individual in his official capacity, the real party in interest is the entity that employs the individual. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (Official capacity suits are generally a way to plead an action against the organization which employs the official.); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1977) (A suit against a municipal employee in his official capacity is the same as a suit against the entity itself). Accordingly, Counts I and III are both claims against the office of the Sheriff. *Carver v. Sheriff of La Salle County*, 787 N.E.2d 127, 138 (Ill. 2003) (when the named defendant was Sheriff Condie in his official capacity as the sheriff of La Salle County, the entity sued was the office of the sheriff of La Salle County).

The purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims who suffer the deprivation. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To establish Section 1983 liability against a municipal entity, a plaintiff must show (1) that he has suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom, or usage of the entity. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Monell*, 436 U.S. at 695 (to hold a municipal entity liable under Section 1983 for the acts committed by its employees, a plaintiff must prove that his injury was caused by a policy or custom of the entity).

Plaintiff can establish a "policy or custom" by showing one of the following alternatives: (1) that the Sheriff's office had an express policy that deprived Plaintiff of a constitutional right; (2) that a well-settled and widespread practice within the Sheriff's office caused Plaintiff's constitutional deprivation; or (3) that the actions of a person with final policymaking authority were responsible for his constitutional injury. *See Toma v. County of Kane*, No. 01 C 7205, 2004 WL 1093497, *3 (N.D. Ill. May 3, 2004).

As an initial matter, Plaintiff must prove that he was deprived of a constitutional right. *See Powe*, 664 F.2d at 643 (listing elements of a Section 1983 claim). In analyzing the claims against Defendants Wilson and Smalley, the Court concluded that the facts asserted do not rise to the level of an Eighth Amendment violation under the standards of *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Wilson v. Seiter*, 501 U.S. 294 (1991).

When a plaintiff fails to prove his underlying claim that the conditions of confinement are unconstitutional, the claim against the sheriff for an unconstitutional policy or inadequate training related to such conditions must fail. *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) ("A failure to train theory or a failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim."); *Phillips v. City of Milwaukee,* 123 F.3d 586, 597 (7th Cir. 1997) ("Neither the City nor the police officers' supervisor can be held liable on a failure to train theory or on a municipal policy theory absent a finding that the individual police officers are liable on the underlying substantive claim."); *Gibson,* 2004 WL 407025, at *7 (if a plaintiff fails to show that the underlying conditions are unconstitutional, his claim based on an unconstitutional policy regarding those conditions must also fail).

Finally, Plaintiff's claims regarding failure to establish adequate policies regarding work conditions and medical treatment fail because, even if true, the policy or lack of policy must be shown to have been the "moving force" behind his injuries. The United States Supreme Court has stated as follows:

>As our § 1983 municipal liability jurisprudence illustrates, however, it is not

14

> enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of County Comm'rs. of Bryan County v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original). Thus, even if Plaintiff could prove that the Sheriff's lack of a policy permitted nonmedical personnel to provide or deny medical treatment at whim, that fact alone does not entitle Plaintiff to damages. *See Toma*, *3. He must also show that the policy or lack of policy was a moving force behind the injury or deprivation. *See Bd. of County Comm'rs*, 520 U.S. at 404. Given the record before this Court, Plaintiff has not shown the existence of a genuine issue of fact on this issue, therefore Plaintiff's claims in Count I and III fail as a matter of law.

Accordingly, the Court grants Defendant Madigan's motion for summary judgment on Counts I and III.

### V.  Summary

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion To Strike Defendant's (*sic*) Madigan and Smalley's Action for Summary Judgment **(#189)** and **GRANTS** Defendants' Motion for Summary Judgment on Counts I, II and III of Plaintiff's Fourth Amended Complaint **(#184)**.  The clerk is directed to enter judgment in favor of Defendants and against Plaintiff on Counts I, II, and III.  This case is terminated.

ENTER this 17th day of November, 2004.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
