**E-FILED**

# United States Court of Appeals

### For the Seventh Circuit

### Chicago, Illinois 60604
**NOTICE OF ISSUANCE OF MANDATE**

DATE:    June 7, 2005

TO:      John M. Waters
         United States District Court
         Central District of Illinois
         Suite 218
         201 S. Vine Street
         U.S. Courthouse
         Urbana, IL  61802-3369

**FILED**

**JUN 0 8 2005**

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

FROM:    Gino J. Agnello, Clerk

RE:      04-4164
         Wronke, Ken v. Champaign County She
         01 C 2308, David G. Bernthal, Magistrate Judge

         Herewith is the mandate of this court in this appeal, along
         with the Bill of Costs, if any.  A certified copy of the
         opinion/order of the court and judgment, if any, and any
         direction as to costs shall constitute the mandate.

         [ ] No record filed
         [X] Original record on appeal consisting of:
**ENCLOSED:**                              **TO BE RETURNED AT LATER DATE:**
         [2]     Volumes of pleadings                    [ ]
         [ ]     Volumes of loose pleadings              [ ]
         [ ]     Volumes of transcripts                  [ ]
         [ ]     Volumes of exhibits                     [ ]
         [ ]     Volumes of depositions                  [ ]
         [ ]     In Camera material                      [ ]
         [ ]     Other_____   [ ]

                 Record being retained for use           [ ]
                 in Appeal No. _____

         Copies of this notice sent to:       Counsel of record
         [ ]     United States Marshal
         [ ]     United States Probation Office
**NOTE TO COUNSEL:**
         If any physical and large documentary exhibits have been filed in
         the above-entitled cause, they are to be withdrawn ten days from the
         date of this notice.  Exhibits not withdrawn during this period will
         be disposed of.

         Please acknowledge receipt of these documents on the enclosed copy
         of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
         Received above mandate and record, if any, from the Clerk, U.S.
         Court of Appeals for the Seventh Circuit.
Date:    **6/8/05**                         **s/V. Ball**
(1071-120397)                              Deputy Clerk, U.S. District Court

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

### JUDGMENT- WITHOUT ORAL ARGUMENT

CERTIFIED COPY

Date: **May 16, 2005**

**BEFORE:**     Honorable FRANK H. EASTERBROOK, Circuit Judge

Honorable DIANE P. WOOD, Circuit Judge

Honorable DIANE S. SYKES, Circuit Judge

No. 04-4164

KENNETH L. WRONKE, Doctor,
            Plaintiff - Appellant

   v.

CHAMPAIGN COUNTY SHERIFF, sued as Champaign County Sheriff's
Department, DAVID MADIGAN, individually and in his official
capacity as Champaign County Sheriff, DAVID SMALLEY,
individually and in his official capacity as a Champaign
County Sheriff's Deputy, et al.,
            Defendants - Appellees


Appeal from the United States District Court for the
Central District of Illinois
No. 01 C 2308, David G. Bernthal, Magistrate Judge

        The judgment of the District Court is AFFIRMED, with costs,
in accordance with the decision of this court entered on this date.

(1060-110393)

A True Copy:
    Teste:

Clerk of the United States
Court of Appeals for the
Seventh Circuit

**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

CERTIFIED COPY

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted May 11, 2005 [*]
Decided May 16, 2005

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-4164

KENNETH L. WRONKE,
　　　　*Plaintiff-Appellant,*

　　　v.

CHAMPAIGN COUNTY SHERIFF'S
OFFICE, et al.,
　　　　*Defendants-Appellees.*

Appeal from the United States
　District Court for the
　Central District of Illinois.

No. 01-2308

David G. Bernthal,
*Magistrate Judge*

Certified Copy:
Teste:

Clerk of the United States
Court of Appeals for the

## ORDER

　　　Kenneth Wronke was jailed for more than four years for civil contempt because he refused to pay child support as ordered by an Illinois court. *See Wronke v. Illinois,* No. 96-3716, 1997 WL 107761, at *1 (7th Cir. March 6, 1997) (unpublished order). During most of that time he was confined in the Champaign County Correctional Center. In this suit under 42 U.S.C. § 1983 and Illinois tort law, he claims that he was denied adequate medical care and subjected to dangerous working conditions. The district court granted summary judgment for the defendants, and on appeal Wronke

------------------

　　　[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

essentially argues that all of his claims should have proceeded to trial. We affirm the judgment.

We recite the facts in the light most favorable to Wronke. *See Gil v. Reed,* 381 F.3d 649, 651 (7th Cir. 2004). Wronke volunteered to run the jail's laundry as "laundry trustee." Though he complains that the job entailed working up to 20 hours a day, he acknowledges that it also entitled him to a single cell and enabled him to spend most of his time in the laundry instead of his cell. A few months before his release, he fell and cut his forearm when a barrel he was filling with laundry separated from its casters and tipped over. A deputy sheriff telephoned the nurse on call and, following her instructions, applied gauze and tape to stop the bleeding. The nurse telephoned Dr. Ahmad, who arrived a few hours later, anesthetized the arm, and stitched the cut. Wronke complained of shoulder pain, and without examining the shoulder Dr. Ahmad opined that the pain was attributable to the cut.

Wronke returned to work as soon as Dr. Ahmad finished treating him, but he was in constant pain for the next ten days, and the range of motion and strength of his shoulder were diminished. When the nurse who helped treat him checked on him the next day, Wronke told her he was "fine under the circumstances." Later, when Dr. Ahmad returned to remove the stitches, he expressed concern about his rotator cuff, but the doctor did not examine his shoulder. After that Wronke never again sought medical attention for his shoulder or asked to see Dr. Ahmad. He continued working in the laundry until his release three months later, and though guards gave him over-the-counter analgesics every few days during that time, Wronke told them the medication was for headaches. On several occasions Wronke also received pain relievers from a nurse after he complained that his shoulder hurt. After his release Wronke continued taking over-the-counter pain medication, but only after ten months did he finally consult a doctor. Wronke says that an MRI conducted roughly fifteen months after the injury revealed a torn rotator cuff.

Wronke then sued Dr. Ahmad, the sheriff, and the deputy sheriff and nurse who responded when he fell. In his fourth amended complaint, he alleged that he tore his rotator cuff when he fell; he claimed that the long hours, dangerous working conditions and inadequate medical care after his fall violated the Eighth Amendment's ban against cruel and unusual punishment. He also claimed that Dr. Ahmad's treatment of his cut and failure to diagnose the rotator cuff injury constituted medical malpractice under Illinois law. A magistrate judge presiding by consent, *see* 28 U.S.C. § 636(c), granted summary judgment for the defendants. The court reasoned that Wronke could not establish a constitutional violation because there was no evidence of deliberate indifference to his medical needs and no evidence that he was forced to work in the prison laundry. Having already excluded the report of his proposed medical expert because of a discovery violation, *see* Fed. R. Civ. P. 26(a)(2)(B), the court

also reasoned that Wronke could not establish malpractice by Dr. Ahmad because a medical expert's opinion is required in Illinois to establish the requisite standard of care and Wronke had none. (The court rejected the argument that cross-examination of Dr. Ahmad himself could fill the gap.)

Wronke's disagreements with the magistrate judge's analysis of his constitutional claims merely highlight his failure to appreciate his evidentiary burden. Whether we look to the Eighth Amendment as do the parties, *but see Ingraham v. Wright*, 430 U.S. 651, 667-78 (1977) (recognizing that Eighth Amendment has been held inapplicable to incarceration for civil contempt); *United States v. Dien*, 598 F.3d 743, 745 (2d Cir. 1979) (Eighth Amendment does not apply to a civil contempt sentence), or instead to the Due Process Clause, *see West v. Schwebke,* 333 F.3d 745, 748 (7th Cir. 2003) (Due Process Clause requires conditions of involuntary civil confinement to bear reasonable relation to purpose of confinement), there is no evidence that the defendants displayed the degree of indifference to Wronke's health or safety necessary to implicate the Constitution. The defendants quickly stopped the bleeding from the cut, and Wronke does not even assert he suffered any lasting harm or unnecessary pain either from their chosen course of treatment or from their brief delay in stitching it, *see Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (prisoner must establish detrimental effect of delay in medical treatment); *Gil v. Reed,* 381 F.3d 649, 663 (7th Cir. 2004) (prisoner must establish more than mere disagreement over best course of treatment). If his shoulder continued to bother him after his arm healed, he should have asked to see the doctor again, *see Farmer v. Brennan,* 511 U.S 825, 847 (1994) (prisoner must establish defendants were subjectively aware of the risk of harm); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). As for the conditions of Wronke's job, his assigned tasks of washing clothes, mopping floors, and delivering meals are nowhere comparable to the dangerous working conditions that courts have held subject to constitutional scrutiny. *Cf. Hall v. Bennett,* 379 F.3d 462, 464-65 (7th Cir. 2004) (risk of electrocution from working on live 400-volt line without protective gloves); *Bagola v. Kindt*, 39 F.3d 779, 780 (7th Cir. 1994) (risk of amputation from dangerous machinery); *Fruit v. Norris*, 905 F.2d 1147, 1150-51 (8th Cir. 1990) (exposure without protective gear to raw sewage inside a well with temperatures reaching 125 degrees); *Wallis v. Baldwin*, 70 F.3d 1074, 1075-77 (9th Cir. 1995) (exposure to asbestos with inadequate protective gear). Moreover, there was no evidence the job *required* Wronke to work 20 hours a day. "It didn't make any difference to me what time I started," he acknowledged, because "I would rather be in the laundry than be in the pod with the dregs of society." Wronke cannot manufacture a constitutional claim by volunteering for a job when he could have avoided the offending conditions by choosing to stay in his cell. *See Christopher v. Buss*, 384 F.3d 879, 882-83 (7th Cir. 2004) (prisoner's voluntary participation in softball game leading to injury undermined his constitutional claim).

    Also without merit is Wronke's challenge to the grant of summary judgement
on his malpractice claim. He argues that the district court should have accepted as
part of the summary judgment evidence a report from his proposed medical expert, or
else let him proceed to trial without expert testimony. Among a host of defects, the
report lacked any reasoning in support of the purported expert's conclusions. *See* Fed.
R. Civ. P. 26(a)(2)(B). Thus, the district court acted within its discretion in striking it.
*See Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742-43 (7th Cir. 1998). Without an
expert's opinion, Wronke could not prove that another doctor would have given any
better treatment. *See Massey v. United States,* 312 F.3d 272, 280 (7th Cir. 2002)
(unless physician's negligence would be apparent to a layperson, Illinois requires
expert medical testimony to establish standard of care and deviation from that
standard). Moreover, even had the court considered the report for purposes of the
defendants' summary judgment motion, it would have added nothing. The purported
expert's entire opinion is confined to two sentences, concluding that Wronke's shoulder
injury was sustained when he fell and that "complications could have been prevented
with proper treatment at time of initial injury." Missing is any evidence from which
a jury reasonably could conclude that Dr. Ahmad should have proceeded differently.
*E.g., Seef v. Ingalls Mem'l Hosp.,* 724 N.E.2d 115, 123 (Ill. App. Ct. 1999).

                                                                                           AFFIRMED.